**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANTHONY G. LOPEZ, JR.,

       Petitioner,

-vs-                                  Case No.  8:03-CV-1436-T-27MAP

JAMES McDONOUGH,[1]

       Respondent.

_____/

## ORDER

Petitioner, a State of Florida inmate, initiated this proceeding *pro se* by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a 1995 conviction entered by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida (Dkt. 1). Respondent has filed a response to the petition (Dkt. 11), and Petitioner has filed a reply thereto (Dkt. 13). This matter is now before the Court for consideration of the merits of the petition.  It is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).

### Background

Petitioner was charged by Information on July 15, 1994 with robbery with a firearm (Dkt. 20, Ex. 19, Vol. I at R. 14-16). The State filed a Notice of Intent to seek sentencing as an habitual felony offender and an habitual violent felony offender on January 6, 1995 (Dkt. 20, Ex. 19, Vol. I at R. 21).  Represented by counsel, Petitioner proceeded to a trial by jury on September 11, 1995.  Petitioner was found guilty as charged, *see* Dkt. 20, Ex.

---

[1] James McDonough, Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

19, Vol. I at R. 61, and on October 16, 1995, he was sentenced as an habitual violent felony offender to a term of natural life (Dkt. 20, Ex. 19, Vol. I at R. 64-70).

Petitioner raised the following issues on direct appeal: (1) whether the trial court erred in denying a motion for mistrial on grounds that the statement by a State witness that she hated Petitioner because he "molested" her daughter tainted the jury; (2) whether the trial court improperly excluded testimony by Sonya Santiago offered by the defense to impeach her daughter's reputation for truthfulness; and (3) whether the absence of [Petitioner] from the bench conferences during voir dire required reversal of his conviction (Dkt. 11, Ex. 004). On January 9, 1998, the state district court affirmed Petitioner's conviction and sentence, but remanded the case to allow the trial court to correct a scrivener's error where the sentencing form failed to indicate that Petitioner was to receive a 15-year minimum mandatory term as part of his habitual violent felony offender life sentence. See Lopez v. State, 707 So.2d 770, 771 (Fla. 2d DCA 1998). The state district court also certified an interdistrict conflict to the Florida Supreme Court because its decision in Lopez that unless the issue was preserved at trial, Petitioner could not raise on direct appeal a claim that he was entitled to a new trial because he was not present at the bench when pretrial juror challenges were exercised conflicted with the holding in Brower v. State, 684 So.2d 1378 (Fla. 4th DCA 1996), review granted, 694 So.2d 739 (Fla. 1997). Lopez, 707 So.2d at 771. The Florida Supreme Court accepted jurisdiction and affirmed Petitioner's conviction and sentence on August 20, 1998, with the mandate issuing on September 11, 1998. See Lopez v. State, 718 So.2d 754 (Fla. 1998).

Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850 on June 29, 1999, asserting five claims of ineffective assistance of counsel:

1.  Trial counsel rendered ineffective assistance of counsel when he failed to inform [Petitioner] of his right to be present and participate in the bench conferences during jury selection;

2.  [Trial] counsel was ineffective for not moving for a mistrial or curative instruction when the jurors saw that the judge was sleeping during the trial;

3.  [Trial] counsel was ineffective when he failed to communicate a plea offer from the state to [Petitioner];

4.  Trial counsel was ineffective for failing to sequester witnesses prior to the witnesses comparing testimony; and

5.  [Trial] counsel's performance was patently deficient based on [trial] counsel's interference with [Petitioner's] Fifth Amendment right to testify.

Dkt. 11, Ex. 11. The trial court summarily denied Petitioner's witness sequestration claim on June 1, 2000 (Dkt. 11, Ex. 12). Following an evidentiary hearing on the remaining grounds raised in Petitioner's Rule 3.850 motion, the trial court denied the motion on May 12, 2001 (Dkt. 11, Ex. 15). As discussed below, Petitioner sought appellate review of the denial of two of the five claims rejected by the trial court. The state district court affirmed the trial court's decision in a per curiam decision entered on November 22, 2002, with the mandate issuing on March 17, 2003. See Lopez v. State, 840 So.2d 238 (Fla. 2d DCA 2003).

On July 8, 2003, Petitioner filed a petition for federal habeas relief raising four of the ineffective assistance of counsel claims presented in his Rule 3.850 motion. Acknowledging that the petition is timely, Respondent argues that Petitioner has failed to establish that he meets the criteria for relief under § 2254(d)-(e). Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law, this Court agrees.

## Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district

court shall entertain an application for a writ of habeas corpus in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). Where a state court initially considers the issues raised in the petition and

enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims.

*See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880,

889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits

in a state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an
      unreasonable application of, clearly established Federal law,
      as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable
      determination of the facts in light of the evidence presented in
      the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335

F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-

conviction relief without written opinion, in this circuit that decision is entitled to the same

deference as if the state court had entered written findings to support its decision. *See*

*Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002). Finally, a state

court's factual finding is presumed to be correct, and a petitioner must rebut the

-4-

presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

### Discussion

Since Petitioner's conviction became final after AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the issues raised in the petition, § 2254(d) governs the review of Petitioner's claim. *See Mobley v. Head,*  267 F.3d 1312, 1316 (11th Cir. 2001).

### GROUNDS TWO AND THREE

Both of these grounds were raised by Petitioner in his Rule 3.850 motion. In Ground Two, Petitioner asserts that trial counsel was ineffective for not moving for a mistrial or asking for a curative instruction after the trial judge allegedly fell asleep during trial counsel's closing argument. Crediting trial counsel's testimony that Petitioner never mentioned that the judge was sleeping to him over Petitioner's testimony to the contrary, the trial court found that Petitioner failed to establish that trial counsel's performance was deficient (Dkt. 11, Ex. 15 at 3).  The trial court further found that "[e]ven if the allegation regarding the trial judge sleeping were true, [Petitioner] testified that it occurred during the closing argument portion of the case and not during the presentation of evidence. . . . Consequently, there is no indication that [Petitioner] suffered any prejudice as a result of this allegation." *Id.*

In Ground Three of his petition, Petitioner alleges that trial counsel was ineffective in failing to convey to Petitioner a plea offer from the State.  Noting that the transcript of the May 4, 1995 hearing reflects that Petitioner rejected the State's initial plea offer because he did not want to be sentenced as an habitual felony offender, the trial court found trial

-5-

counsel's testimony during the Rule 3.850 hearing that there were no additional plea offers provided by the State credible and rejected this claim, finding that since trial counsel did not have any plea offers to communicate to him, Petitioner failed to establish that trial counsel's performance was deficient (Dkt. 11, Ex. 15 at 4-5).

Although Petitioner advised the state appellate court that he was challenging the trial court's decision denying his Rule 3.850 motion, as Petitioner's post-conviction appellate brief confirms, he failed to include Grounds Two and Three[2] therein (Dkt. 11, Ex. 17). In Florida courts, a petitioner is considered to have abandoned claims which are not properly presented in the appellate brief. See *Simmons v. State*, 934 So.2d 1100, 1111 n.12 (Fla. 2006) (finding petitioner's claim that the prosecutor made improper remarks concerning the DNA evidence on petitioner's car seat was waived because petitioner's counsel did not properly brief the issue) (citing *Coolen v. State*, 696 So.2d 738, 742 n.2 (Fla. 1997) (failure to fully brief and argue points on appeal "constitutes a waiver of these claims").

Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims

[2]In his petition, Petitioner also failed to raise the claim that trial counsel interfered with his Fifth Amendment right to testify in his own behalf. He contention that Respondent's reference to the claim is adequate to place the claim before this Court is incorrect. In federal court, Petitioner bears the burden of presenting his claims for review, and that burden cannot be shifted to the State. That having been said, even if the Court were to consider Respondent's reference to the claim sufficient to present the issue before this Court, for reasons set forth in the discussion of Grounds Two and Three, having been abandoned on appeal, the claim is procedurally barred from review in this Court.

-6-

to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). *See also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal of its denial" (citation omitted)).[3]

In his reply, Petitioner contends that the following statement included in his appellate brief provided the state district court "meaningful opportunity to consider the allegations" presented in his Rule 3.850 motion: "Appellant does not concede that Claims Two, Three or Five is without merit by failing to brief these claims. Appellant relies on the record to support his contentions that relief should be granted," *see* Dkt. 11, Ex. 16 at 9. Under Florida's appellate rules and decisional law, issues not presented and argued in an initial brief are deemed abandoned or waived on appeal and will not be considered by the reviewing court. *See, e.g. Duest v. Dugger*, 555 So. 2d 849, 852 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."). Because Petitioner abandoned these claims on appeal, they are now procedurally barred from review in state court. *Id. See also State v. Mitchell*, 719 So.2d 1245, 1247 (Fla. 1st DCA 1997), *rev. denied*, 729 So.2d 393 (Fla. 1999). The Eleventh Circuit is in accord with this principle. *See Atkins v. Singletary*, 965 F.2d 952, 955 n.1 (11th Cir. 1992).

In order for a court to consider claims brought in a federal habeas petition they must first be fully exhausted in state court. 28 U.S.C. § 2254(b)(1). The exhaustion requirement

---

[3]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

is not designed to frustrate relief in the federal courts, but rather to give the state court an opportunity to correct any errors which may have crept into the state criminal process. In this circuit, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we . . . treat those claims now barred by state law as [providing] no basis for federal habeas relief." *Snowden v. Singletary*, 135 F.3d at 736.

A petitioner's claims or portions of claims which are not exhausted but would clearly be barred if returned to state court must be dismissed. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here, it would be futile to dismiss the case to give Petitioner the opportunity to exhaust Grounds Two and Three because they could have and should have been included in the appeal of the order denying his Rule 3.850 motion. *See* Fla. R. Crim. P. 3.850(g).

In recognition of "the important interest in finality served by state procedural rules, and the significant harm to the states that results from the failure of federal courts to respect them," federal habeas courts will only entertain a claim that is procedurally barred in state court if the petitioner demonstrates cause for the default and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Otherwise, the claim is procedurally defaulted in this Court. *Id.* at 735 n.1. Cause must ordinarily be something external to the petitioner -- something that cannot fairly be attributed to him. *Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir. 1995). To satisfy the prejudice requirement, Petitioner must show "actual" prejudice as a result of the alleged violation of federal law. *United States v. Frady,* 456 U.S. 152 (1982).

Petitioner offers no excuse for his failure to raise these claims on appeal, and the Court discerns none that would amount to good cause to overcome his procedural default. Having failed to allege, much less show, that any factors external to the defense prevented the presentation of the claims on appeal, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier,* 477 U.S. 478 (1986).

An exception to the "cause-and-prejudice" requirement was recognized in *Wainwright v. Sykes*, 433 U.S. 72 (1977), when the Court stated that the standard developed there would not bar habeas relief for a victim of a "miscarriage of justice." *Id*. at 90. Absent a showing of cause and prejudice, a petitioner in a collateral proceeding who wishes to avoid a procedural bar to consideration of the merits of his underlying claim must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotations omitted); *see also Schlup v. Delo*, 513 U.S. 298, 316 (1995) (citations omitted).

In this context, Petitioner must show constitutional error coupled with newly discovered evidence that was not presented at trial which would establish factual innocence rather than mere legal insufficiency. *Id*; *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). *See also Schlup v. Delo*, 513 U.S. at 324. Petitioner does not assert that he has "new" reliable evidence of factual innocence and there is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of these claims. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of these claims. *See*

*Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995). Applying § 2254(b), Petitioner is procedurally barred from raising the claims. Consequently, Grounds Two and Three will not be reviewed on the merits.

## GROUNDS ONE AND FOUR

Having been raised in Petitioner's Rule 3.850 motion and the appeal of the trial court's decision denying the motion, Grounds One and Four are properly exhausted. Because a state court initially considered these claims and entered a decision on the merits, § 2254(d) governs the Court's review thereof. *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001). Both claims are premised on the right to effective assistance of counsel.

To establish a prima facie claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

As set forth *infra*, in rejecting Petitioner's claims on the merits, the trial court applied the correct standard of review for ineffective assistance of counsel claims (Dkt. 11, Ex. 12 at 2; Ex. 15 at 2). *See Strickland v. Washington*, 466 U.S. at 687. Thus, to establish that he is entitled to relief on these claims, Petitioner must establish that the trial court

incorrectly applied the *Strickland* standard in reaching its determination that the claims

raised in his Rule 3.850 motion lack merit. *See Parker v. Sec. for Dept. Of Corrs.*, 331 F.3d

764, 766 (11th Cir. 2003), *cert. denied*, 540 U.S. 1222 (2004).

**Ground One**

In Ground One, Petitioner contends that he was denied effective assistance of

counsel when trial counsel failed to inform him that under the Florida Supreme Court's

interpretation of Fla. R. Crim. P. § 3.180(a)(4), he had a right to be present at bench

conferences when peremptory strikes were exercised during jury selection (Dkt. 1 at 5).

In rejecting this claim, the trial court found as follows:

> In his first claim, Defendant asserts that he was excluded from the bench
> conferences where trial counsel exercised peremptory strikes without
> Defendant's participation and subsequently accepted the jury panel without
> input from the Defendant. Defendant claims that counsel did confer with him
> about questions to be asked for prospective jurors, but did not confer
> regarding peremptory strikes. Defendant claims that if he had been present
> at the bench conferences, he would have stricken different jurors and seated
> a different panel. Defendant further argues that there is the "substantial
> probability" that the jurors he would have chosen would have returned a
> different verdict.
>
> First, while a defendant has the right to be physically present at the
> immediate site where pretrial juror challenges are exercised under *Francis
> v. State*, 413 So.2d 1175 (Fla. 1982), a defendant may be excluded from
> personal participation in a side bar conference during voir dire at which the
> defense attorney advises the court of peremptory challenges, where the jury
> is selected in the defendant's presence, and there is no limitation on his
> ability to consult with counsel before any decisions or challenges are made.
> *See Willis v. State*, 523 So.2d 1283 (4th DCA 1988). The Second District
> Court of Appeals adopted *Willis* in *Lewis v. State*, 566 So.2d 270 (1990), and
> held that the fact that defendant was not present with counsel at side bar
> conferences regarding juror challenges is not a basis for reversal. *See id.* at
> 272.
>
> In this case, Defendant was present with counsel during voir dire, and had
> the opportunity to confer with counsel during this time. (*See* transcript p. 3,

lines 9-11, p. 59, lines 3-5, and p. 73, lines 6-7). Applying *Lewis* to this case, the fact that Defendant was not present with counsel during the challenges is not a basis for reversal. Therefore, it cannot be said that counsel was deficient under *Strickland*.

Second, Defendant claims that he would have used his juror challenges differently than his attorney. Defendant claims he was deprived of a fair and impartial jury where trial counsel failed to challenge jurors implied biased, *i.e.* Mr. Knoll and Ms. Hill. The Florida Supreme Court adheres to the following *Lusk* test to determine juror competency:

"The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions of law given to him by the court." *Pentecost v. State*, 545 So.2d 861 (Fla. 1989), citing *Lusk v. State*, 446 So.2d 1038, 1041 (Fla.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 148 (1984).

With respect to Mr. Kroll, Defendant claims that trial counsel should have challenged Mr. Kroll due to the fact that Mr. Kroll has a friend in law enforcement, is currently employed as a U.S. postal worker, and has been the victim of numerous crimes. A review of the record indicates that Mr. Kroll stated that he has a friend employed in probation and parole, but that it would not affect his ability to deliberate fairly. (*See* transcript p. 63 l. 8-11). Regarding Mr. Kroll's employment as a U.S. postal worker, it is unclear what relationship or prejudicial effect the Defendant claims this has to his abilities as a juror. Finally, Mr. Kroll indicated that he has had minor property stolen from him on a few occasions, but that this left him with no negative feelings toward law enforcement. (*See* transcript p. 63 l. 25 through p. 64 l. 1-3 and p. 67 l. 18-24).

With respect to Ms. Hill, Defendant claims that trial counsel should have challenged Ms. Hill due to the fact that her sister had been missing for more than a year with no clues as to her whereabouts, and that Ms. Hill's car had been stolen. However, Ms. Hill also stated that she would be able to set aside any feelings about these events in order to weigh the facts and come up with a verdict. (See transcript p. 80 l. 4-22). Further, Ms. Hill stated that she felt strongly that she would be able to keep her sister's situation out of her deliberations. (*See* transcripts p. 87 l. 1-8).

Thus, after a review of the record, it appears that both Ms. Hill and Mr. Kroll clearly indicated that they would be able to lay aside any bias or prejudice to

> render their verdict solely upon the evidence presented pursuant to the *Lusk* test for juror competency.
>
> Conversely, Defendant argues that he would not have stricken Mr. Probst or Ms. McKeel from the jury panel. While the record is unclear as to trial counsel's reasons for striking these two jurors, when reviewing a claim for ineffective assistance of counsel, strategic decision made by counsel during a course of a trial will not be viewed in hindsight. Those decisions will only be considered in light of the totality of the situation at hand. *See Anderson v. State*, 467 So.2d 781 (Fla. 3d DCA 1985). Viewing the fact that Defendant was able to have an unbiased jury under the *Lusk* test with the exclusion of Mr. Probst and Ms. McKeel, Defendant was not deprived of the effective assistance of counsel as to ground one.

Dkt. 11, Ex. 12.

Effective assistance of counsel is required during the voir dire process. *Brown v. Jones*, 255 F.3d 1273, 1279-80 (11th Cir. 2001)*; Hughes v. United States,* 258 F.3d 453, 456 (6th Cir. 2001). A criminal defendant has a right under the Sixth Amendment to be present and to be represented by counsel at every stage of the proceedings against him, including the impaneling of the jury. *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *United States v. Bascaro*, 742 F.2d 1335, 1349 (11th Cir. 1984); *United States v. Chrisco*, 493 F.2d 232 (8th Cir. 1974). This right necessarily extends to that phase of the jury selection process involving the exercise of peremptory strikes. *Bascaro*, 742 F.2d at 1349.

When Petitioner proceeded to trial in 1995, the Florida Rules of Criminal Procedure provided that a defendant had a right to be present and to consult with his attorney during the exercise of peremptory challenges. *See* Fla. R. Crim. P. 3.180 (1994). The Florida Supreme Court interpreted Rule 3.180(a)(4) as requiring that the defendant be present at

the immediate site where challenges were being exercised, rather than merely being present in the courtroom.[4]

As demonstrated by the Eleventh Circuit's holding in *Bascaro* addressing the defendant's absence from a peremptory strike conference, the scope of this right is narrower in federal court. The *Bascaro* court found that where a defendant was in the courtroom when the voir dire questioning took place and the peremptory strikes were given actual effect by the clerk's reading off the list and had an opportunity to discuss his misgivings with trial counsel during or immediately following the impaneling process, if no objection was made at the time to the defendant's absence, there was no violation of the defendant's Sixth Amendment right to be present for the peremptory strike phase of the jury selection process. *Bascaro*, 742 F.2d at 1350 (citing *United States v. Chrisco*, 493 F.2d 232, 237 (8th Cir. 1974) ("Whether this decision was made as a result of tactical considerations or as a result of inexperience and ignorance of the law is not material to our disposition of this case, for we hold that under the facts shown the appellants were sufficiently 'present' at the impaneling of the jury to satisfy . . . the Constitution, since they both observed the strikes being read off and registered their opinions of the venire with their counsel" (footnotes omitted)).

---

[4]On April 27, 1995, the Florida Supreme Court entered its decision in *Coney v. State*, 653 So.2d 1009, 1013 (Fla. 1995), holding that under the then-current rules governing criminal proceedings in Florida, the defendant had a right to be present at the bench when pretrial juror challenges were exercised. Although *Coney* has since been superseded by statute, *see Amendments to Florida Rules of Criminal Procedure*, 685 So.2d 1253, 1254 n.2 (Fla. 1996), it still applies to cases in which jury selection took place after April 27, 1995, and before January 1, 1997. Because Petitioner's trial commenced on September 11, 1995, *Coney* is applicable to his case. *See Wike v. State*, 813 So.2d 12, 21 (Fla. 2002). Where the substantive issue regarding a defendant's "presence" is raised under the guise of ineffective assistance of counsel, it is subject to analysis under the prejudice prong of *Strickland*. *Id*. at 22.

The record reflects that Petitioner was in the courtroom during voir dire (Dkt. 20, Ex. 19, Vol. II at Tr. 1). Petitioner does not contend that he was not able to confer with trial counsel during jury selection. To the contrary, as demonstrated by the transcript of the voir dire proceedings, trial counsel conferred with Petitioner before each bench conference. *See* Dkt. 20, Ex. 19, Vol. II at Tr. 40, 59; 73; 87. The jury panel was accepted, and following a brief delay while the trial court heard argument on several pretrial motions, the jury was, without objection, sworn (Dkt. 20, Ex. 19, Vol. II at Tr. 98). This Court concludes, therefore, that the procedure followed during the selection of Petitioner's jury did not violate any federal constitutional right of Petitioner.

Failure of a state court to follow state criminal procedure rules does not, of itself, raise a federal constitutional question cognizable in a federal habeas corpus proceeding. Federal courts do not sit to enforce state procedural rules. *See Stewart v. Estelle*, 634 F.2d 998, 999 (5th Cir. 1981);[5] *Van Poyck v. Wainwright*, 595 F.2d 1083 (5th Cir. 1979) (finding that "a state court's failure to follow its own procedural rules does not of itself raise a federal constitutional question cognizable in habeas corpus." (citation omitted)). Petitioner has shown no right to be present at the bench conference, no basis for an objection, and no deficient performance on the part of trial counsel.

Even if trial counsel's performance were deficient, this Court would be precluded from granting Petitioner the relief he seeks. The United States Supreme Court has held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of

---

[5]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).  Although represented by counsel during voir dire, the exclusion of Petitioner from the bench conferences could have violated *Stincer* if his presence would have contributed to the fairness of the proceedings, but as the Eleventh Circuit recently held in addressing a defendant's pretrial absences, under *Strickland*, Petitioner must prove more to establish that he is entitled to habeas relief on an ineffective assistance of counsel claim. *See Diaz v. Crosby*, 402 F.3d 1136, 1142-43 (11th Cir. 2005).  When the standards of *Strickland v. Washington*, *supra*, are applied to ineffective assistance of counsel claims, those claims will fail if the petitioner cannot establish either of *Strickland*'s two grounds. *See Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).  To secure relief in this habeas proceeding, Petitioner must demonstrate that trial counsel's performance was deficient and that he suffered prejudice as a result of the deficient performance. Petitioner has not explained how his presence at the bench conference would have contributed to the fairness of his trial.

In order to satisfy the prejudice prong of *Strickland,* Petitioner must show that the selection process produced a biased juror, *Hughes,* 258 F.3d at 458, a situation which did not befall Petitioner. Petitioner does not assert, much less provide clear and convincing evidence, that the jurors empaneled could not be impartial. Absent evidence to the contrary, the Court must presume that the jurors were fair and impartial "as indeed they swore to be." *United States v. Khoury,* 901 F.2d 948, 955 (11th Cir. 1990) (footnote omitted).

Petitioner bears the burden of establishing that his counsel was ineffective. *See Strickland*, 466 U.S. at 687; *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the

-16-

'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). The Court finds that Petitioner fails to demonstrate how he was prejudiced by his absence from the bench conferences during voir dire. His predictions about what "might have been" had he been present are mere speculation, which is not sufficient to establish ineffective assistance of counsel. *See Hollis v. Smith*, 134 Fed.Appx. 364, 367 (11th Cir. 2005).

The Court finds that Petitioner has failed to establish that the trial court's finding that he failed to meet the *Strickland* test is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented. Having failed to make the necessary showing, Petitioner has not demonstrated that he is entitled to federal habeas relief on this claim.

## GROUND FOUR

Next, Petitioner asserts that trial counsel was ineffective in "failing to sequester the witnesses prior to the witnesses comparing testimony" (Dkt. 1 at 9). Petitioner asserts that "Mr. Dietrich told Mr. Mitchell that Petitioner had not yet been identified. Mr. Mitchell states something along the lines of 'don't worry, my turn is coming up next.' This testimony clearly goes to the identification of the Petitioner."

The record confirms that the rule of sequestration was not invoked the first day of the trial. The following exchange occurred at the beginning of the second day of trial:

Trial Counsel:     Judge, one preliminary matter has come to my attention by Michelle Lopez, who is in the courtroom here, that apparently she overheard some conversation between Mr. Dietrich and his mother and Barry Mitchell yesterday, and I don't know if that conversation influenced Barry Mitchell's testimony in court.

I would like to have Barry Mitchell recalled, even if it's out of the presence of the jury, to establish what conversation, if any, he may have had with Mr. Dietrich regarding the matter of testifying.

Apparently there was some conversation heard by Ms. Lopez that Mr. Dietrich felt that I had confused him and apparently his mother was very upset, and Barry Mitchell said something along the lines of don't worry, my turn is coming up next, something to that effect, and I don't know.

Court: And that's the extent of it?

Trial Counsel: Excuse me?

Court: That's the extent of it?

Trial Counsel: Is that correct, Ms. Lopez?

Ms. Lopez: Yes.

Court: Let me make two observations. First, I don't remember the rule being invoked in this case, and, two, that's the kind of thing that wouldn't be in violation of the rule of sequestration of witnesses anyway. It's not a discussion of testimony.

Trial Counsel: Well, I'm concerned it went to the issue of identification.

Court: Well, you just told me what was overheard.

Trial Counsel: So you're not going –

Court: Nobody invoked the rule in this case.  Ms. Bossie said yesterday it had been invoked and asked that somebody leave the courtroom, but it hasn't.  I haven't directed you to instruct the witnesses.  I haven't directed her to instruct her witnesses.  As far as I know, people are coming and going from the courtroom.

-18-

| | |
|---|---|
| Trial Counsel: | Would I be allowed to question him on that? |
| Court: | Is he here? |
| Prosecutor: | He was released yesterday. |
| Court: | No. The inconvenience of it outweighs the prospect that it's going to amount to anything. So I'll deny your request. |
| | Okay. Are we ready to proceed otherwise? |
| | (No response). |
| Prosecutor: | Judge, at this point I will formally invoke the rule from now on. |
| Court: | Okay. The rule is invoked. |

Dkt. 20, Ex. 19, Vol. IV at 231-32.

Petitioner postulates that Mitchell's in-court identification of him as the robber was the product of a *recent* fabrication prompted by the comment Dietrich allegedly made to him. When this claim was raised in Petitioner's Rule 3.850 proceedings, the trial court conducted an evidentiary hearing. Represented by court-appointed counsel, Petitioner testified as follows:

Q: Okay. When the rule was invoked, was it invoked at the beginning of the trial or after testimony had been taken from some of the witnesses?

A: What do you mean by that?

Q: The rule where witnesses can't talk to each other.

-19-

A:   Let me say something, across the street in that courthouse you have the state witnesses and the defense witnesses sitting all together in the hallway on a bench, you understand, no rule was in effect when I went to trial, not –

Q:   Ever, never?

A:   Yeah, afterward Fernandez brought it up to Judge Padgett.

Q:   When did he do that?

A:   Right then in court.

Q:   Before the witnesses testified or after?

A:   One witness testified or two when we found out that Mitchell and Holloway – Dietrich were speaking to each other.   Dietrich came to the Court with his mother.   His mother sat in court.

He got on the stand and we impeached Dietrich about my description.   When he left court, when he went out Mitchell – while he was testifying Mitchell came and stood there in front of my witnesses and the restaurant employees and stated, "I don't know why they called me.   I can't identify that man.   It's been over a year and I can't identify him."   And it's true, he couldn't never identify me.

Q:   Were you outside during this time?

A:   No sir, my ex wife was, my mother and one of my brothers was.

Q:   Okay.

A:   So, they was out there.   The State asked for a recess.   Dietrich came out with his mother and Mitchell said "I don't know what he got me here for."

And Dietrich told him, "I just came off the stand and they impeached me, they made me look like a liar.   If you can't identify him, that man is walking."

That's what he told Mitchell. I wasn't going nowhere. They had me guilty. But I'm just saying what he told Mr. Mitchell. And he said, "Well, I can't do it."

And his mother, she's not involved in my case, she's not a witness, she wasn't in the restaurant when it was robbed, she tells Mitchell, and I quote, "I saw that man just for a few seconds and I will never forget him. How can you say that you can't identify the man?"

After that Ms. Bose [sic] came tipping up to the courtroom and put her arm around Mr. Mitchell and walked down the hallway. Well, the recess was over, Mitchell is the next witness. He walked in the courtroom and that man couldn't identify me for a year and a half, photopak, nothing. In fact, the night of the crime he said the man that had a gun had curly hair, 18 or 19 years old, 220 pounds, bad case of acne, 6 something.

We were going to use it against him because it was a report of the crime that night. It wasn't oath, but that's on record. And Mr. Fernandez got it, I got it. So he gets on the stand and lo [sic] and behold he points me out, that's the man, that's the man.

Court:    Are we going far astray from the original point?

Counsel: Yes, sir.

Q: At some point did these witnesses talk to each other out there?

A: They sure did. I just told you that they did.

Q: What discussion –

     Court:    Did you witness these conversations?

A: No, but I have witnesses that will verify this for me.

     Court:    So this is all hearsay?

A: Well, yeah, you can say that.

Dkt. 11, Ex. 14 at PCR 90-93.

Following the evidentiary hearing, the trial court rejected Petitioner's claim, finding as follows:

In ground four of his Motion, Defendant asserts that trial Counsel's failure to sequester witnesses allowed them to compare testimony in the outside hallway during the trial. Specifically, Defendant alleges that one of the State's witnesses, Daniel Dietrich, discussed the fact that Defendant had not yet been clearly identified as the robber during the trial to an incoming witness, Barry Mitchell. Defendant argues that this encouraged the witness to make a positive identification of Defendant when the witness had been previously unable to do, therefore, counsel's failure to invoke the rule of sequestration prejudiced the Defendant.

During the January 4, 2001 hearing, trial counsel testified that he had no independent recollection that the rule was invoked. (*See* January 4, 2001 Hearing Transcript, page 9, attached). However, Defendant's allegation with regard to this ground continues to be unclear. Defendant fails to identify specific communications about testimony that would have tainted the testimony of the witnesses called subsequently. (*See* January 4, 2001 Hearing Transcript, attached). Additionally, Defendant testified to events that he had no personal knowledge [sic] and did not witness. (*See* January 4, 2001 Hearing Transcript, page 24, attached).

A review of the trial transcript provides some assistance with regard to this allegation. During the trial[,] counsel brought to the court's attention that Michelle Lopez, a relative of the Defendant, apparently overheard some conversation between the two witnesses, Daniel Dietrich and Barry Mitchell. (*See* Trial Transcript, Volume III, pages 230 through 232, attached). Trial counsel raised concerns to the trial judge, out of the presence of the jury, that the conversation may have influenced Mr. Mitchell's testimony. (*See* Trial Transcript, Volume III, pages 230 through 232, attached). Ms. Lopez confirmed that she overheard part of the conversation between the witnesses when Mr. Mitchell said something to the effect of "don't worry, my turn is coming up next." (*See* Trial Transcript, Volume III, page 230). The trial court then responded:

THE COURT:   Let me make two observations. First, I don't remember the rule being invoked in this case, and, two, that's the kind of thing that wouldn't be in violation of the rule of

witnesses anyway. <u>It's not a discussion of testimony</u>.

(Emphasis added) (*See* Trial Transcript, Volume III, page 231, attached).

It is clear that the rule of sequestration was not invoked until the second day of trial. It is further established that the issue of the witness' (sic) out-of-court communication was brought to the trial court's attention by trial counsel. The trial court determined, in a timely manner, that the alleged conversation was not a violation of the rule of sequestration.

Since the alleged out-of-court communication was brought to the attention of the trial court, and the trial court ruled on the issue in a timely manner. Defendant has failed to meet the first prong of *Strickland*, it is unnecessary to address the prejudice component. As such, no relief is warranted with respect to ground four of Defendant's Motion.

Dkt. 11, Ex. 12.

Under the rules governing proceedings in both Federal and Florida courts, with certain exceptions not applicable here, "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. . . ." *See* Fed. R. Evid. 615; Fla. R. Evid. 90.616 ("At the request of a party the court shall order, or upon its own motion the court may order, witnesses excluded from a proceeding so that they cannot hear the testimony of other witnesses"). The purpose of this "rule of sequestration" is twofold: "[i]t exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid." *Geders v. United States*, 425 U.S. 80, 87 (1976) ("The judge's power to control the progress and, within the limits of the adversary system, the shape of the trial includes broad power to sequester witnesses before, during, and after their testimony" (citations omitted)). The determination of whether a violation of the rule of sequestration has

occurred, and if so, whether to declare a mistrial or to order a new trial  is a matter within the trial court's sound discretion. *United States v. Eastwood*, 489 F.2d 818, 821 (5th Cir. 1973) (citations omitted).

As Petitioner acknowledges, once he was made aware of the alleged conversation, trial counsel took remedial action by bringing the matter to the attention of the trial court and seeking leave to question Mitchell about the allegation.  The trial court found that the comment was not a violation of the rule of sequestration because it had not been invoked, and since the discussion was not about trial testimony, there was no improper communication between the witnesses. In order to prevail on this claim, Petitioner must establish that he was prejudiced by trial counsel's allegedly deficient performance. Petitioner must, therefore, rebut the presumption of correctness accorded the trial court's factual finding that the comment was not about testimony by clear and convincing evidence. Petitioner has not carried this burden.

To the extent that Petitioner's claim may be read to be rooted in the concept of "fundamental fairness," *see Donnelly v. DeChristoforo,* 416 U.S. 637 (1974), the Court concludes that the alleged violation did not render Petitioner's trial fundamentally unfair.

On June 3, 1994, two men robbed a Kentucky Fried Chicken Restaurant ("KCF") located on the corner of Humphrey and North Dale Mabry in Tampa, Florida.  One of the two robbers carried a gun.  Of the six people on duty at the KFC at the time, only two had direct contact with the robbers -- Assistant Manager Barry Mitchell and Daniel Dietrich.  Both men were able to provide the investigating officers with descriptions of the robbers. Mitchell and Dietrich testified at Petitioner's trial.

According to Dietrich, a man approached the restaurant shortly after 11:00 p.m. and attempted to enter through one of the front doors. Dietrich saw the man's face for approximately 10 seconds as he signaled to the man that the restaurant was closed. A short while later, Mitchell accompanied Dietrich to the front door as he prepared to leave. When Dietrich pushed the door open, a man armed with what Dietrich described as an "Uzi" confronted Mitchell and Dietrich and ordered them back inside the restaurant. A second man appeared carrying a dark bag slung over his shoulder. Dietrich testified that because all the lights in the restaurant were on at the time, he was able to get a good look at the robbers (Dkt. 20, Ex. 19, Vol. III at Tr. 114). Dietrich further testified that the robber carrying the gun was the man who had tried to enter the restaurant earlier. The robbers ordered Mitchell and Dietrich to move to the back of the restaurant. Dietrich was directed to lay on the floor and the robber carrying the dark bag was left to stand watch over Dietrich while the armed robber accompanied Mitchell to the safe. According to Mitchell and Dietrich, the robbers placed the money inside the bag the dark bag and left.

Dietrich identified both Petitioner and Juan Delgado as the robbers from a photo-pack on June 22, 1994 (Dkt. 20, Ex. 19, Vol. III at Tr. 141; 176-77; Vol. IV at Tr. 269-70). Mitchell was shown the photo-pack containing Petitioner's picture on either June 17 or 18, 1994 (Dkt. 20, Ex. 19, Vol. IV at Tr. 269; 277). He did not identify anyone in the photo-pack as the gunman at that time.

Dietrich's out-of-court and in-court identifications were strongly challenged at trial as tainted by an overly suggestive out-of-court identification procedure. He remained, however, adamant that his identification of the robbers was based on his independent recollection of the robbery. Mitchell testified that he was not able to positively identify

-25-

anyone from looking at the photographs. When queried about the fact that he did not make an out-of-court identification, Mitchell testified: "I wasn't really sure when I was looking at the photos if the individuals may have been the actual ones, and I didn't want to pick a wrong person as opposed to getting them in trouble if they had not done it. I didn't want to make a decision like that." (Dkt. 20, Ex. 19, Vol. III at 208). Mitchell did, however, identify Petitioner as the armed robber during the trial.

When asked to explain to the jury why he was able to identify Petitioner in the courtroom but not from the photographs in the photo-pack, Mitchell testified that "because it's actually a live situation. It's not a one dimensional photograph. And all the details that I maybe can't remember looking at a picture, I can put together and see." Mitchell then confirmed that Petitioner was the man who robbed him at gunpoint (Dkt. 10, Ex. 19, Vol. III at Tr. 209). Mitchell further testified that he thought he told the investigating officer that one of the individuals in the photo array looked familiar but he "really didn't know for sure." After rigorous cross-examination, Mitchell again identified Petitioner as the armed robber (Dkt. 20, Ex. 19, Vol. III at Tr. 212). The testimony given by Mitchell and Dietrich was corroborated by the testimony of co-defendant Juan Delgado. Delgado testified that he participated in the robbery with Petitioner. He confirmed that Petitioner was the gunman (Dkt. 20, Ex. 19, Vol. III at Tr. 239, 241-44).

The restaurant was located a few hundred yards from Petitioner's apartment. Maria Pena testified that she was at Petitioner's apartment a short time before the robbery occurred. Pena further testified that she saw Petitioner and Delgado leave Petitioner's apartment. Delgado was carrying a dark bag at the time. When they returned to the apartment approximately 30 to 55 minutes later, both men were "hysterical" and Petitioner

-26-

was carrying a gun, which he threw onto the couch. The dark bag was "full of money" (Dkt. 20, Ex. 19, Vol. IV at Tr. 307-08).

Petitioner's sister-in-law testified that Petitioner admitted to her that he had robbed the KFC (Dkt. 20, Ex. 19, Vol. IV at Tr. 327). Petitioner's mother-in-law testified that after the robbery occurred, Petitioner asked permission to bury a machine gun in her backyard. She refused his request (Dkt. 20, Ex. 19, Vol. IV at Tr. 337). His mother-in-law further testified that Petitioner and her daughter admitted to her that Petitioner committed the robbery (Dkt. 20, Ex. 19, Vol. IV at Tr. 386). Petitioner's wife testified that she and Petitioner were alone together walking along the beach when the robbery occurred. Mrs. Lopez also refuted the testimony by her  mother and sister regarding the gun and the statements they attributed to her regarding the identity of the robbers.

Petitioner was found guilty as charged. Given the facts of this case, the Court concludes that Petitioner's trial was not fundamentally unfair. Petitioner has not met the prejudice prong of the *Strickland* test by showing a reasonable probability that, but for trial counsel's failure to invoke the rule of sequestration, the result of the proceeding would have been different, *Strickland v. Washington*, 466 U.S. at 691. Because the determination that Petitioner failed to show actual prejudice is dispositive of his claim, the Court need not decide whether trial counsel's representation was in fact unreasonable under prevailing professional norms. *See* Strickland, 466 U.S. at 697.

The Court concludes that Petitioner has failed to show that the trial court's rejection of this claim is contrary to, or an unreasonable application of, the *Strickland* standard or that the decision is based on an unreasonable determination of the facts in light of the

evidence presented. Having failed to make the necessary showing, Petitioner is not entitled to § 2254 relief on this claim.

**Conclusion**

For the foregoing reasons, the Court determines that Petitioner has not met the criteria for relief under 28 U.S.C. § 2254.

ACCORDINGLY, it is **ORDERED and ADJUDGED**:

1. The petition for writ of habeas corpus is **DENIED** (Dkt. 1).

2. The **Clerk** is directed to enter judgment against Petitioner, terminate all pending motions, and close this case.

3. The **Clerk** is directed to mail a copy of this order to Petitioner.


**ORDERED** in Tampa, Florida, on *September 27ᵗʰ*, 2006.


_____
JAMES D. WHITTEMORE
UNITED STATES DISTRICT JUDGE




Copy to: All Parties of Record



SA:jsh